IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY RIVAS-CASTRO,<br><br>Defendant. | CRIMINAL NO. 16-303 (FAB) |

## REPORT AND RECOMMENDATION

### INTRODUCTION

On May 18, 2016, a federal Grand Jury returned a two count Indictment against defendant Jerry Rivas-Castro ("Defendant Rivas") for being a convicted felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) and for possession of a firearm with an obliterated serial number, in violation of Title 18, United States Code, Section 922(k).   (Docket No. 7).

On July 15, 2016, Defendant Rivas filed a "Motion to Suppress", moving the Court to suppress all physical, electronic and digital evidence seized during the warrantless search of his person and arrest, as well as all incriminating statements he made as fruits of the poisonous tree.   In essence, Defendant avers that there was no reasonable suspicion to stop and search him because the law enforcement agents did not observe him possessing a firearm before they intervened with him and his arrest was based on an uncorroborated anonymous tip.   (Docket No. 19).

On the same day, the presiding District Judge referred Defendant Rivas' "Motion to Suppress" to this United States Magistrate Judge for hearing and report and recommendation. (Docket Nos. 20 and 21).

<u>United States of America v. Jerry Rivas-Castro</u>
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 2
_____

On August 12, 2016, the Government filed its "Motion in Opposition to Defendant's Motion to Suppress", submitting the Motion to Suppress should be denied because the law enforcement officers had reasonable suspicion to conduct a <u>Terry</u> stop of Defendant and, consequently, a lawful arrest. Moreover, Defendant's confession was knowing and voluntary after Defendant was provided with the Miranda warnings. (Docket No. 24).

On September 9, 2016, the suppression hearing was held. The testimonies of PRPO Luis O. Roldán-Rosado ("PRPO Roldán") and Sergeant Carlos J. Robles-Castro ("Sgt. Robles") were heard on behalf of the Government. Direct and cross examinations were conducted. Several exhibits from the defense were introduced into evidence. (Docket No. 28).

On October 13, 2016, the suppression hearing continued. The testimony of PRPO Harold Hernández ("PRPO Hernández") was heard on behalf of the Government. Direct and cross examination was conducted. Defendant did not take the stand nor present any evidence on his behalf. (Docket No. 29).

**FACTUAL BACKGROUND**

Pursuant to the testimonies of the PRPD law enforcement officers at the suppression hearing, on May 9, 2016, at approximately 8:25 p.m., PRPO Roldán was at the Las Piedras Precinct and he received information from an anonymous male caller (who sounded desperate and frightened) indicating that a white, tall male, wearing a red shirt, jeans and a black fanny pack on the waist was at the municipal parking lot next to "El Resuelve Bar" in Las Piedras, Puerto Rico and was talking about going to a public

United States of America v. Jerry Rivas-Castro
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 3
_____

housing project to kill two or three people while he was holding a handgun in his right hand. The anonymous caller indicated that the armed individual was also threatening the persons who were at the municipal parking. The anonymous male caller did not identify himself. The caller told PRPO Roldán that he personally observed the armed individual and that he was afraid that something could happen. Immediately after receiving the anonymous call, PRPO Roldán called his supervisor, Sgt. Robles, to his personal cellular phone and told him about the anonymous call.

At that time, Sgt. Robles was in Barrio Montones I in Las Piedras taking care of a breaking and entry complaint in a residence. Sgt. Robles was there with PRPO Hernández and PRPO Orlando Abreu ("PRPO Abreu"). They were all in police uniforms and in a marked patrol vehicle. They continued with the complaint at the residence because they were half way done and had to finish the same.

Within ten or fifteen minutes, the PRPD agents (Sgt. Robles, PRPO Hernández and PRPO Abreu) responded to the parking lot area near "El Resuelve" Bar and observed three males close to a vehicle in the parking lot. See Exhibits A, B, C, D, E, F, G, J, K, K-1, L, M and N. One of the individuals matched the description of the male given by the anonymous caller to PRPO Roldán. That male was later identified as Defendant Rivas. He was a tall, white male, with a red shirt, jeans and a fanny pack in his waist. None of the other individuals there had a red shirt. The area was well illuminated and the night was clear. As soon as the PRPD agents started approaching the individuals, the individuals asked the agents what they were doing there. Sgt. Robles told them that they

were verifying a tip of an armed person at that location. Sgt. Robles and PRPO Hernández kept watching Defendant who was told to put his hands where the agents could seem them and he started walking backwards. Then, Defendant Rivas unbuckled his fanny pack from his waist and dropped it to the floor with its zipper opened. At that time, PRPO Hernández thought that Defendant Rivas was trying to pull out a firearm. The PRPD agents did not know which of the individuals had the firearm, as informed by the anonymous caller. Thus, for safety reasons, PRPO Hernández was talking to Defendant asking him to raise his hands because he was going to verify the information. When Defendant Rivas raised his hands, PRPO Hernández shouted out loud that Defendant had the firearm because he observed the grip of a firearm sticking out of Defendant's waistband area. Defendant Rivas was told to drop to the floor and raise his hands but he did not comply. Defendant attempted to flee the scene by running and trying to jump a wall but he was stopped by PRPD agents.

Defendant struggled with PRPD agents and attempted to reach for the firearm on his waistband area while resisting the arrest. PRPD agents were able to grab and seize the firearm from Defendant and he was placed under arrest. The seized firearm was a Pistol 1911, .45 caliber, with an obliterated serial number, loaded with two rounds of .45 caliber of ammunition. See Exhibits 1, 2 and 3. They also seized a Husky razor holder with a razor blade. However, the fanny pack was not recovered by the agents. The attention of the agents was placed on the individuals and they could not recover the fanny pack at the time of the arrest nor later.

Defendant was transported in a patrol car to the CDT in Las Piedras because he was complaining of pain in his neck.   Defendant was also taken to the Las Piedras Police Station where PRPO Hernández advised him of his Miranda rights, which he acknowledged.

## LEGAL DISCUSSION

### A.     Investigatory Stop based on Reasonable Suspicion.

The issue of whether the stop of Defendant was legal and based on reasonable suspicion, as required by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), is first addressed. An investigative stop, also known as a Terry stop, *see* Terry v. Ohio, 392 U.S. at 1, occurs when a police officer, acting on reasonable and articulable suspicion of criminal activity, briefly detains an individual to confirm or dispel his suspicion.   *Id.* at 6, 88 S.Ct. 1868 (*citing* United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996)).

With regards to investigative stops, the Court must determine "not whether the police had probable cause to act, but instead whether the actions taken were reasonable under the circumstances." *Id.*   The Court must first conclude whether the officer's action was justified at its inception. If the action is justified, the Court must then ask whether the action taken was reasonably related in scope to the circumstances which justified the interference. *Id.* To satisfy the first prong, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Young, 105 F.3d 1, 7 (1st Cir. 1997) (*citing* United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)).   To fulfill the second

prong, the Court must examine the totality of the circumstances. *See* United States v. Walker, 924 F.2d 1, 4 (1st Cir. 1991); United States Acosta-Colón, 157 F.3d 9, 14 (1st Cir. 1998).

Pursuant to the uncontested evidence presented at the suppression hearing, and taking into account that the testimonies of the three (3) law enforcement officers were consistent and corroborated each other, there was reasonable suspicion for the PRPD police officers to stop Defendant Rivas.

The PRPD agents' initial detention of Defendant Rivas was legal inasmuch as, based on the totality of the circumstances, it was reasonable to believe that Defendant Rivas was involved in criminal activity. Prior to arriving at the scene, the PRPD agents already knew, pursuant to an anonymous call, that an armed male individual was at the parking lot area near the "El Resuelve Bar" area in Las Piedras. The armed individual, later identified as Defendant Rivas, was talking about going to a public housing project to kill two or three people while he was holding a handgun in his hand. Upon arrival to the parking area of the bar ten or fifteen minutes later, the PRPD agents were able to corroborate by their own observations the presence of a male individual who matched the very specific physical description given by the anonymous caller to PRPO Roldán. That is, a white, tall male, with a red shirt, jeans and a black fanny pack on his waist. Upon approaching Defendant Rivas, he started to walk backwards and away from the police officers. The PRPD agents asked Defendant to raise his hands and they told him that they wanted to talk to him to confirm the information received during the anonymous call.

United States of America v. Jerry Rivas-Castro
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 7
_____

Defendant did not comply with the instructions of the PRPD agents. Defendant started to walk away backwards and reached for towards his back and unbuckled the fanny pack he had in his waist and dropped it to the floor. At first, Defendant did not comply with PRPD agents' demands to raise his hands. Only after several attempts, Defendant finally raised his hands and it was then that PRPO Hernández observed the grip of a pistol on Defendant's waistband area.

As properly argued by the Government, contrary to Defendant's allegations in his Motion to Suppress, the PRPD agents took measures to assess the reliability of the anonymous tipster. The PRPD agents supplemented the anonymous tip with their own observations when they arrived at the scene. The only male individual at the scene with a red shirt was Defendant Rivas who also matched the other characteristics of the physical description given by the anonymous caller. PRPD agents testified they approached Defendant Rivas to ask him a couple of questions. However, Defendant did not comply with their commands to raise his hands and engaged in a suspicious activity by walking backwards and putting his hands in his back then unbuckling the fanny pack and throwing it on the ground. The PRPD agents testified they did not know which of the individuals there present had the firearm. In particular, PRPO Hernández indicated that when he saw Defendant Rivas reaching to his back, he thought that Defendant was going to pull out a firearm.

As such, it was reasonable that for safety reasons, the PRPD agents asked Defendant to raise his hands. Asking Defendant to stop and raise his hands was

Case 3:16-cr-00303-FAB-CVR   Document 30   Filed 10/28/16   Page 8 of 12

United States of America v. Jerry Rivas-Castro
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 8
_____

reasonable under the circumstances which the PRPD agents were facing after having reason to believe he was armed, observing his behavior when they approached him and considering the location they were they were at.   It should be noted that Defendant Rivas was not frisked by the PRPD agents until after PRPO Hernández observed him in possession of the firearm seized.

Even though Defendant Rivas had an opportunity, no evidence was presented by him to rebut the testimonies of PRPD agents at the suppression hearing. Defendant Rivas did not take the stand.   As such, the testimonies of the PRPD agents are uncontested.

Thus, under the totality of the circumstances and based on the personal observations the PRPD officers, the PRPD police officers had a reasonable, articulable suspicion about Defendants Rivas' involvement in some criminal activity.   Thus, Defendant Rivas' initial stop was valid and within the parameters of <u>Terry</u>, 392 U.S. at 21; <u>United States v. Chhien</u>, 266 F.3d 1, 6 (1st Cir. 2001).

**B.     Warrantless Arrest.**

A warrantless arrest is constitutionally valid if, at moment the arrest is made, officers have probable cause to make it; that is, if at that moment, facts and circumstances within their knowledge and of which they had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.    <u>United States v. Ayres</u>, 725 F.2d 806 (1st Cir. 1984); <u>Young</u>, 105 F.3d at 6 (same).    Whether there is probable cause for a warrantless arrest is determined under an objective standard, not by inquiry into officers' presumed motives.    <u>Id.</u>

United States of America v. Jerry Rivas-Castro
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 9
_____

Probable cause "is a practical, nontechnical conception" offering an acceptable compromise between competing societal interests in protecting citizens on the one hand from abusive interferences with privacy and unfounded charges of crime, and on the other hand in recognizing the necessity to afford 'fair leeway for enforcing the law in the community's protection.'"  Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 (1949).

A warrantless arrest requires probable cause, the existence of which must be determined in light of the information that law enforcement officials possessed at the time of the arrest. *See* United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994).  To establish probable cause, the Government "need not present the quantum of proof necessary to convict." United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991); United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997).

The inquiry into probable cause focuses on what the officer knew at the time of the arrest, United States v. Brown, 169 F.3d 89, 91 (1st Cir. 1999) and should evaluate the totality of the circumstances. United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Meade, 110 F.3d at 198 n. 11; United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006).

It is unquestioned that when a defendant is arrested, he may be searched both for evidence of his crimes and for the safety of the officers. "It is also well established that the

defendant's lawful arrest permits the police to search his person . . ." United States v. Fiasconaro, 315 F.3d 28, 37 (1st Cir. 2002). *See also* United States v. Doward, 41 F.3d 789, 792-93 (1st Cir. 1994). "[I]t is settled beyond peradventure that a search of an individual's person made incident to a valid arrest is itself valid, despite the absence of an arrest warrant." United States v. Winchenbach, 197 F.3d 548, 552 (1st Cir. 1999).

Pursuant to the testimonies of the PRPD agents at the suppression hearing, Defendant Rivas was seen by the PRPD agents in possession of a firearm during his Terry stop which was legally conducted as above explained. Defendant struggled with the PRPD agents while they were trying to arrest him and even tried to reach for the firearm that he had on his waistband while resisting the arrest. These facts support that there was probable cause for Defendant Rivas' arrest for violations to the Puerto Rico Weapons Law.

The determination of whether probable cause exists must not rest on isolated facts but depends on the cumulative effect of the facts in the totality of the circumstances. Probability, not a *prima facie* showing of criminal activity, is the standard. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333 (1959).

The inquiry into probable cause to support an arrest is not necessarily based upon the offense actually invoked by the arresting officer, but upon whether the facts known at the time of arrest objectively provided probable cause to arrest. *See* United States v. Jones, 432 F.3d 34 (1st Cir. 2005) (*citing* Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588 (2004)).

In view of the foregoing, Defendant Rivas' warrantless arrests was legal and based on probable cause.

**C.   Defendant's Statements.**

Defendant Rivas posits in his Motion to Suppress that, when a Defendant makes inculpatory statements that are the product of an unconstitutional search and seizure, the statements are fruits of the poisonous tress and shall be suppressed based on the underlying constitutional violation.

As above explained, Defendant Rivas' initial Terry stop was based on reasonable suspicion and his eventual arrest was based on probable cause. As such, Defendant's statements are not the results of an illegal arrest, search and seizure.  Hence, Defendant's request for suppression of his statements as fruits of the poisonous tree lacks a factual basis and is without merit.

As a matter of fact, Defendant Rivas only claims that his statements were the fruit of the poisonous tree.  Defendant Rivas did not allege in his Motion to Suppress nor during the suppression hearing that the statements he provided to the law enforcement agents under custody were not knowing and/or involuntary or that they were given without him being advised of his Miranda rights. Defendant has not alleged either that he was under coercion or duress when he waived his rights and made the inculpatory statements.  As a matter of fact, the fact that Defendant Rivas was provided with his Miranda rights at the police precinct was briefly mentioned during the suppression

United States of America v. Jerry Rivas-Castro
Criminal No. 16-303 (FAB)
Report and Recommendation
Page 12
_____

hearing by one of the PRPD agents. However, no evidence was presented as to voluntariness or not of the statements. As such, suppression on this ground fails.

## CONCLUSION

In view of the foregoing, it is recommended that Defendant Rivas' "Motion to Suppress" (Docket No. 19) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 28th day of October of 2016.

                                          s/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ-RIVE
                                          UNITED STATES MAGISTRATE JUDGE