IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

      **Plaintiff,**

              **v.**                  **Criminal No.** 16-303 (FAB)

JERRY RIVAS-CASTRO,

      **Defendant.**

MEMORANDUM AND ORDER

BESOSA, District Judge.

A district court may refer a pending dispositive motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Loc. R. 72(a). Any party may file written objections to the report and recommendation within fourteen days of being served with the magistrate judge's report. 28 U.S.C. § 636(b)(1); Loc. R. 72(d). A party that files a timely objection is entitled to a *de novo* determination of those portions of the report to which specific objection is made. 28 U.S.C. § 636(b)(1); Loc. R. 72(d); United States v. Raddatz, 447 U.S. 667, 675 (1980). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); accord Loc. R. 72(d).

A grand jury indicted defendant Jerry Rivas-Castro ("Rivas-Castro") for possession of a firearm while being a convicted felon in violation of 18 U.S.C. § 922(g)(1) and for possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). (Docket No. 7.) Rivas-Castro filed a motion to suppress physical evidence and statements that he argues were collected as a result of an illegal stop and seizure. (Docket No. 19.) The magistrate judge issued a Report and Recommendation ("R&R"), recommending that the Court deny defendant's motion to suppress because the Puerto Rico Police Department ("PRPD") had reasonable suspicion to stop Rivas-Castro and probable cause to arrest him. (Docket No. 30.) Rivas-Castro objected to the R&R. (Docket No. 36.) Having conducted a *de novo* review of the facts and law, the Court **ADOPTS** the R&R.

## DISCUSSION

## A.    Reasonable Suspicion for an Investigatory Stop

In his objection, Rivas-Castro argues that the magistrate judge erred by improperly applying the law regarding anonymous tips. (Docket No. 36 at pp. 2-10.) He argues that simply matching the description given by an anonymous caller, without any corroboration, is not sufficient for a finding of reasonable suspicion to support conducting an investigatory stop. <u>Id.</u>

An anonymous tip "b[earing] adequate indicia of reliability for the officer to credit the caller's account" can establish reasonable suspicion for an investigatory stop.  Navarette v. California, 134 S. Ct. 1683, 1688-89 (2014); United States v. Aviles-Vega, 783 F.3d 69, 74 (1st Cir. 2015); see also Florida v. J.L., 529 U.S. 266, 271-74 (2000) (analyzing the reliability of a 9-1-1 call).  "Even a reliable tip[, however,] will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'"  Navarette, 134 S. Ct. at 1690 (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

In Aviles-Vega, the First Circuit Court of Appeals reviewed the validity of an investigatory stop based on an anonymous call. 783 F.3d 69.  The Court, applying the rulings of the Supreme Court of the United States in Navarette and J.L., found that when an anonymous caller reported eyewitness knowledge of criminal conduct "soon after" it occurred and provided police with sufficient detail to identify the vehicle, the report was sufficiently reliable to create the reasonable suspicion required for the police to conduct an investigatory stop.  Aviles-Vega, 783 F.3d at 73-75.  The Court also noted that Puerto Rico is a concealed-carry jurisdiction which prohibits "[t]he visual display of a firearm" even if the possessor has a valid firearms license.  Id. at 73.

In Aviles-Vega, an anonymous caller reported that he observed a passenger pass a firearm from the front seat of a vehicle to a passenger in the back seat.  Id. at 72.  The caller described the vehicle as "a wine-colored Chevrolet Lumina, with a license plate ending in 959 and a broken right side tail light . . . traveling from Isabela to Aguadilla along Road 2."  Id.  Upon arriving at the intersection ten to fifteen minutes after the call, the police identified a vehicle that matched the description provided by the anonymous caller.  Id.  While the vehicle occupants were complying with the officers' instructions to exit the vehicle, an officer observed that the defendant had a firearm in his waist and seized the weapon.  Id.  The officer then conducted a "pat-down" of defendant and discovered a second firearm, which he also seized. Id.

Here, as in Aviles-Vega, an anonymous male caller reported that he personally observed an individual visually displaying a firearm.  (Docket No. 34 at pp. 15, 26, 38 (recounting the officer's testimony that the anonymous informant said that the person had a black pistol in his right hand and was threatening to kill people).)  The fact that the informant personally observed the individual wielding the firearm "lends significant support to the tip's reliability."  See Aviles-Vega, 783 F.3d at 74; Navarette, 134 S. Ct. at 1689.  The fact that he was visibly displaying the

firearm, a crime pursuant to Puerto Rico law, satisfies the requirement that the reasonable suspicion must be of a 'criminal activity.'  See Aviles-Vega, 83 F.3d at 73; Navarette, 134 S. Ct. at 1690.

Also as in Aviles-Vega, the anonymous caller here provided information regarding the appearance of the suspect and his location.  (Docket No. 34 at pp. 12, 38 (recounting the officer's testimony that the anonymous informant said that the person holding the firearm was a tall, "white person," wearing a red shirt and blue jeans, and located in the municipal parking lot on Road 198 next to El Resuelve business).)  Although the description of the vehicle in Aviles-Vega included very specific information – the digits of the license plate number and the broken state of the rear light, the description, here, of the person's physical characteristics combined with his clothing and exact location is specific enough to contribute to the reliability of the call.

Additionally, as the First Circuit Court of Appeals considered in Aviles-Vega and the United States Supreme Court considered in Navarette, the time between witnessing the crime and the anonymous call reporting it contributes to the reliability of the call.  In Navarette, the police arrived on the scene eighteen minutes after receiving the call, 134 S.Ct. at 1689, and in Aviles-Vega, "police found a vehicle matching the detailed description in the same area

'within the half hour of receiving the call[,]'" 783 F.3d at 75.
Similarly, here, fifteen to thirty-five minutes[1] elapsed between
the time the officer received the anonymous call and the officers'
arrival at El Resuelve business.  (Docket No. 34 at pp. 10 (8:25
p.m. call received), 51 (fifteen minutes total), (9:00 p.m. PRPD
arrived).)  Thus, the time elapsed here between receipt of the
anonymous call and the PRPD's arrival at the scene is
contemporaneous, making the anonymous tip "especially reliable."
See Aviles-Vega, 783 F.3d at 75 (quoting Navarette, 134 S. Ct.
at 1689).

Based on the totality of the circumstances - the anonymous
caller claiming to have eye-witness knowledge, the contemporaneous
reporting of the activity, and the specificity of the description
of the person holding the firearm, which the PRPD matched to Rivas-
Castro - the call was reliable.  This reliability and the required
nexus to criminal activity satisfied by the visible display of the

---

[1] Although the R&R reports that only "ten or fifteen minutes" had
elapsed between the call and the arrival of the PRPD, (Docket No.
30 at p. 3), and defendant argues that thirty-five minutes elapsed,
(Docket No. 36 at p. 6), this distinction is insignificant because
caselaw on this point considers eighteen minutes and thirty minutes
still to be "contemporaneous."  See Navarette, 134 S.Ct. at 1689;
Aviles-Vega,783 F.3d at 75.  Even the thirty-five minutes alleged
by defendant is not far outside of the established thirty-minute
timeframe and would thus still be considered contemporaneous.

firearm establish that the PRPD had sufficient reasonable suspicion of criminal activity to conduct an investigatory stop.

Rivas-Castro also argues that his acts of walking backwards and failing to comply with the officers' command to raise his hands were not sufficient to establish reasonable suspicion to justify the stop. Id. at 8-10. As discussed above, however, the PRPD had reasonable suspicion to justify the investigatory stop before Officer Hernandez instructed Rivas-Castro to raise his hands. Additionally, unlike in J.L. where the identified individual "made no threatening or otherwise unusual movements," 529 U.S. at 268, the officers could consider Rivas-Castro's movement to unbuckle the fanny pack as unusual. Thus, defendant's arguments regarding walking backwards and raising his hands do not overcome the reasonable suspicion previously established. Accordingly, the Court **ADOPTS** the R&R's analysis finding that there was reasonable suspicion to support conducting an investigatory stop.

**B.   Warrantless Arrest and Subsequent Statements**

Rivas-Castro's only objection to the R&R's denial of his motion to suppress his in-custody statements is that the R&R discussed "a Fifth Amendment violation of his Miranda rights," that he did no assert in his motion to suppress. (Docket No. 36 at p. 10.) The R&R, however, rests its decision to admit the statements on a finding that the investigatory stop and warrantless

arrest were both properly supported and that therefore the statements were not "fruits of the poisonous tree." (Docket No. 30 at p. 11.)  It only discusses the <u>Miranda</u> standard briefly in addition to this finding noting that defendant has not asserted arguments pursuant to the <u>Miranda</u> standard.  <u>Id.</u>

Defendant does not object to the R&R's finding regarding the warrantless arrest.[2]  Thus, the Court **ADOPTS** the R&R's analysis that there was probable cause for the arrest and that defendant's statements after his arrest were not invalid "fruits of the poisonous tree."

### CONCLUSION

Having conducted a *de novo* review and having addressed defendant's objections, the Court **ADOPTS** in full the R&R, (Docket No. 30).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 11, 2017.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[2] Although defendant cites cases discussing probable cause for arrest in Section D of his motion, the arguments in that section discuss reasonable suspicion required for an investigatory stop. <u>See</u> Docket No. 36 at p. 10.